## U.S. DISTRICT COURT * W.D. LOUISIANA * MONROE DIVISION

**GREGORY SCOTT,** *et al.*                    **DOCKET NO.: 3:16-cv-00376**

*versus*                                        **JUDGE: S. Maurice Hicks**

**NORTHERN LOUISIANA MEDICAL**
**CENTER,** *et al.*                            **MAG. JUDGE: Karen Hayes**

_____

### RESPONSE BY NORTHERN LOUISIANA MEDICAL CENTER
### TO PLAINTIFFS' FIRST SET OF DISCOVERY
_____

NOW INTO COURT, through undersigned counsel, comes Ruston Louisiana Hospital Company, LLC d/b/a Northern Louisiana Medical Center, who now responds to the *Plaintiffs' First Set of Discovery to Northern* as follows, reserving all rights to amend and supplement said responses at a later date:

### GENERAL OBJECTIONS

Defendant presents the following General Objections. Defendant does not waive any of the General Objections in response to any specified discovery request propounded. All of Defendant's responses are subject to these general objections. The General Objections are as follows:

1. Defendant objects to these discovery requests to the extent that they attempt to impose upon them any obligation not set forth in the La. Code of Civil Procedure or the Federal Rules of Civil Procedure.

2. Defendant objects to these discovery requests to the extent that they are vague, ambiguous, overly oppressive, unduly burdensome, onerous, or expensive to answer, and are not reasonably calculated to lead to the discovery of admissible evidence.

3. Defendant objects to these discovery requests to the extent that they seek information or documentation protected from disclosure by the work-product doctrine, the attorney-client privilege, or any other privilege or rule of confidentiality. Defendant also objects to the extent the discovery seeks the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the defendant.

EXHIBIT "2"

4.  Defendant objects to these discovery requests to the extent that the propounded discovery purports to require defendant to identify information withheld on the grounds of privilege that is inconsistent with his/her assertion of a privilege.

5.  Defendant objects to these discovery requests to the extent that they seek information that is not in their possession, custody or control.

6.  Defendant objects to these discovery requests to the extent that they impose upon them an unreasonable and unduly burdensome investigation to obtain information that is, or ought to be, in defendant's possession or control or is equally available to either party.  Such propounded discovery is overly broad, unduly burdensome, oppressive and not reasonably calculated to lad to the discovery of admissible evidence.

7.  Defendant objects to these discovery requests to the extent that they call for proprietary and/or confidential business information.

8.  Defendant objects to these discovery requests to the extent that they seek information that is overly broad in time or scope.

9.  Defendant objects to these discovery requests to the extent that they call for a conclusion of law or any other non-fact related conclusion and, as such, are inappropriate for discovery requests.  The scope of discovery is limited to seeking information concerning operative facts.

10.  Defendant objects to these discovery requests to the extent that the requested information is confidential and invasive of the privacy interest of non-parties to this litigation.

11.  Defendant objects to any discovery request that requires it to identify and produce documents that will "support" particular facts on the grounds that the responses are protected by the attorney-work product doctrine and/or attorney-client privilege, or any other privilege or rule of confidentiality.

12.  Defendant objects to any discovery to the extent that it seeks information that is not relevant to the subject matter of the litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

## _**ANSWER TO INTERROGATORIES**_

**INTERROGATORY NO. 1:**

Does Northern permit MRI's to be ordered from the emergency room? If "yes," please explain in detail how MRI's can be ordered from the emergency room. If "no," please explain why not. For either "yes" or "no," please identify all witnesses and documents which will substantiate the response.

EXHIBIT "2"

**ANSWER TO INTERROGATORY NO. 1:**

Yes, ordering MRI's from the emergency room is permitted.  Emergency Department physicians who desired to have an MRI for their patient could order one themselves by written order in the patient's emergency room chart.  While STAT MRIs from the ER are not a common occurrence, they are not prohibited by any NLMC policy and they do occur as evidenced by the attached printout showing all MRIs ordered for Emergency Department patients from January 1, 2010 through March 24, 2016 which was previously attached as an exhibit to depositions in this matter. In addition, the testimony of Mr. Brady Dubois, Sherri Burns, and Sandra Goss will substantiate this response.

 INTERROGATORY NO. 2:

Please explain in detail whether Northern makes its MRI machine easily accessible to its emergency physicians who request an MRI? In answering this question, please identify all witnesses and documents which will substantiate the response.

**ANSWER TO INTERROGATORY NO. 2:**

Respondent objects insofar as the phrase "easily accessible" is vague and ambiguous. Without waiving said objection, please see Defendant's response to Interrogatory No. 1.

INTERROGATORY NO. 3:

Why is there not a MRI button on MEDHOST in Northern's emergency room? In answering this question, please identify all witnesses and documents which will substantiate the response.

**ANSWER TO INTERROGATORY NO. 3:**

This information has been requested from the client but not yet received. This response will be supplemented upon receipt of same.

EXHIBIT "2"

INTERROGATORY NO. 4:

Are there any other departments (*i.e.* other than the emergency department) at Northern which use MEDHOST? If "yes," please identify all such departments and whether they have an MRI button.

**ANSWER TO INTERROGATORY NO. 4:**

Yes; the MEDHOST software program is used throughout the hospital.  The MEDHOST program used within the emergency department is called EDIS; the MEDHOST program used in other areas of the hospital is called ClinDoc.  MEDHOST is not used specifically in a department by department capacity.  Information regarding which departments have MRIs buttons has been requested and will be provided upon receipt of same.

INTERROGATORY NO. 5:

With respect to MEDHOST software at Northern, please provide answers to the following questions:

    (i)       Who ordered it?

    (ii)      Who installed it in Northern's emergency department, and when?

    (iii)    Who decided what options would and would not be available on the MEDHOST screens used in Northern's emergency department?

    (iv)    What modifications, if any, have been made to MEDHOST's software in Northern's emergency department over the past two (2) years?

**ANSWER TO INTERROGATORY NO. 5:**

    (i)       MEDHOST was ordered by CHS Professional Services Corporation LLC (CHS-PSC), an entity with whom the hospital has a management agreement.

    (ii)      MEDHOST was installed by CHS-PSC with the assistance of a team sent by MEDHOST to work with NLMC's IT department

EXHIBIT "2"

(iii)     CHS-PSC and MEDHOST control the options "build" of EDIS.   The EDIS

system in the emergency department was deployed "out of the box."

(iv)     This information has been requested and will be provided upon receipt of same.

INTERROGATORY NO. 6:

Does Northern ever require its emergency patients to be "precertified"? If "yes," please explain under what circumstances, and if "no," please explain why not. In answering this question, please identify all witnesses and documents who will substantiate the response.

**ANSWER TO INTERROGATORY NO. 6:**

Respondent objects insofar as Interrogatory No. 6 is vague and ambiguous in that pre-

certified is not defined.   Notwithstanding objection and reserving same, Respondent does not

require that financial information and/or insurance coverage be verified for patients in its

Emergency Room before rendering appropriate and necessary emergency medical care.   The

testimony of Mr. Brady Dubois and the Director of the Business Office will substantiate this

response.

INTERROGATORY NO. 7:

Does Northern train or instruct any of its physicians or other staff on when "precertification" is or is not appropriate? If "yes," please describe all such instructions and training in detail. If "no," please explain why not. In answering this question, please identify all witnesses and documents who will substantiate the response.

**ANSWER TO INTERROGATORY NO. 7:**

Respondent objects insofar as Interrogatory No. 7 is vague and ambiguous in that "pre-

certification" is not defined.   Notwithstanding said objection and reserving same, physicians do

not receive training or instruction on financial verification.

EXHIBIT "2"

INTERROGATORY NO. 8:

Does Northern offer treatments/procedures to emergency patients once they are admitted which are not available to them without being admitted? If "yes," please explain which treatments/procedures, and if "no," please explain why not. In answering this question, please identify all witnesses and documents who will substantiate the response.

## ANSWER TO INTERROGATORY NO. 8:

Respondent objects insofar as Interrogatory No. 8 is vague and ambiguous. Notwithstanding objection and reserving same, certain treatment/procedures such as surgeries, cardiac catheterizations, cardiac stents, interventional radiology, physical therapy, occupational therapy, etc.  cannot be conducted in the emergency department and require either admission if deemed medically appropriate by the physicians and within the capability of the hospital's services, or referral to another facility if they are not.  The testimony of Mr. Brady Dubois and Sandy Goss, the Director of the ER, will substantiate this response.

INTERROGATORY NO. 9:

Does Northern have any evidence to contradict the following testimony taken from pages 37 and 38 of Dr. Taylor's deposition:

Q: Was there a reason why you didn't order a CAT scan?
A: It wasn't a test that she [Jordan] needed.
Q: Would a CAT scan have shown the hematoma?
A: There's a good chance not.
Q: Being it may or may not?
A: It probably would not.
Q: Why is that?
A: Because of the density and the makeup of the disease process of the spinal cord.

If "yes," please identify all witnesses, documents, facts, and opinions which support a position contrary to the above testimony.

## ANSWER TO INTERROGATORY NO. 9:

Respondent objects insofar as Interrogatory No. 9 seeks an expert medical opinion which is within the expertise of physicians, not a facility like a hospital.

EXHIBIT "2"

INTERROGATORY NO. 10:

Does Northern instruct or train any of its physicians on EMTALA? If "yes," please explain in detail what training is given, by whom, and when. If "no," explain why not training is given. In answering this question, identify all witnesses and documents who will substantiate the response.

**ANSWER TO INTERROGATORY NO. 10:**

Physicians receive training on EMTALA at the time of hire and annually thereafter.

Training and education is provided online through Advanced Learning Courses and educational

packet provided through the Medical Staff Credentialing office.

INTERROGATORY NO. 11:

Does Northern instruct or train any of its administrative staff on EMTALA? If "yes," explain in detail what training is given, by whom, and when. If "no," explain why no training is given. In answering this question, identify all witnesses and documents who will substantiate the response.

**ANSWER TO INTERROGATORY NO. 11:**

Information responsive to this request has been requested and will be provided upon

receipt.

INTERROGATORY NO. 12:

Does Northern receive federal or state money or benefits for complying with EMTALA requirements and regulations? If "yes," explain how much money Northern has received over the past five (5) years for complying with EMTALA's requirements and regulations. Also, identify all documents and witnesses who will substantiate the position that Northern has complied with EMTALA requirements and regulations.

**ANSWER TO INTERROGATORY NO. 12:**

Respondent objects insofar as Interrogatory No. 12 as vague and ambiguous in that

"complying with EMTALA" is not defined.  Notwithstanding objection and reserving same,

NLMC does not receive money or benefits for "complying" with EMTALA as that question is

presently understood.

EXHIBIT "2"

INTERROGATORY NO. 13:

Did anyone at Northern contact or attempt to contact Plaintiffs' insurance company on the date of the incident? If "yes," explain in detail all contacts or attempted contacts. If "no," describe all effort taken by you before reaching the conclusion that no such contacts or attempts were made. For both "yes" and "no," identify all witnesses and documents that will substantiate your response.

**ANSWER TO INTERROGATORY NO. 13:**

Information responsive to this request has been requested and will be provided upon receipt of same.

INTERROGATORY NO. 14:

Identify all CPT codes utilized by Northern, including its emergency department, for MRI's over the past five (5) years.

**ANSWER TO INTERROGATORY NO. 14:**

This information has been requested and will be provided upon receipt of same.

INTERROGATORY NO. 15:

Identify all CPT codes utilized by Northern, including its emergency department, for CT scans over the past five (5) years.

**ANSWER TO INTERROGATORY NO. 15:**

Information responsive to this has been requested and will be provided upon receipt of same.

INTERROGATORY NO. 16:

Identify all by names of participants, time, and telephone number all calls made and/or received by anyone at Northern to/from Plaintiffs' insurer on August 19, 2014.

**ANSWER TO INTERROGATORY NO. 16:**

Respondent objects insofar as the requested information refers to patients other than Jordan Scott.  Such information is private and confidential and disclosure of same would violate

HIPAA.  Information responsive to this request, with respect to Jordan Scott, has been requested and will be provided upon receipt of same if same exists.

INTERROGATORY NO. 17:

Identify by names of participants, time, and fax number all facsimiles sent and/or received by anyone at Northern to/from Plaintiffs' insurer on August 19, 2014.

**ANSWER TO INTERROGATORY NO. 17:**

Respondent objects insofar as the requested information refers to patients other than Jordan Scott.  Such information is private and confidential and disclosure of same would violate HIPAA.  This information has been requested and will be provided upon receipt of same if same exists.

INTERROGATORY NO. 18:

Identify all by names of participants, time, and email address all emails sent and/or received by anyone at Northern to/from Plaintiffs' insurer on August 19, 2014.

**ANSWER TO INTERROGATORY NO. 18:**

Respondent objects insofar as the requested information refers to patients other than Jordan Scott.  Such information is private and confidential and disclosure of same would violate HIPAA.  This information has been requested and will be provided upon receipt of same if same exists.

INTERROGATORY NO. 19:

Has Northern changed any of its policies as a consequence of Jordan Scott's treatment on August 19, 2014? If "yes," please describe all changes in detail. If "no," please explain why not.

**ANSWER TO INTERROGATORY NO. 19:**

Respondent objects insofar as Interrogatory No. 19 is vague and ambiguous. Notwithstanding objection and reserving same, Respondent submits that it has not changed any of its policies as a consequence of Mrs. Scott's treatment on August 19, 2014.

EXHIBIT "2"

INTERROGATORY NO. 20:

Identify all persons by name, DOB, and job title (other than enrolled counsel) who had any responsibility or participation in answering this discovery.

**ANSWER TO INTERROGATORY NO. 20:**

Susan White, RN, CPHRM, Director of Risk Management/Patient Safety Officer/Facility

Compliance Officer, NLMC, 401 E. Vaughn Avenue, Ruston, LA  71270

*RESPONSE TO REQUESTS FOR PRODUCTION*

REQUEST FOR PRODUCTION NO. 1:

Contracts between Northern and Northern Louisiana Emergency Physicians, LLP over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Respondent submits these contracts have been provided under separate cover.  However,

please see the documents attached hereto.

REQUEST FOR PRODUCTION NO. 2:

Contracts between James Patrick Taylor, M.D., any physician practice group he is associated with, and Northern.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

NLMC does not have a separate contract with Dr. Taylor or any of the other ED

physicians. It's contract is with the entity identified in RFP No.1.

REQUEST FOR PRODUCTION NO. 3:

Contracts between Northern and Blue Cross from August 19, 2014, through present date.

EXHIBIT "2"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant objects to this Request on that basis that it is overly broad, vague, and seeks information that is highly proprietary and confidential. Without waiving said objection, if Plaintiff will identify a specific aspect of said agreement, such as procedures for obtaining Blue Cross authorizations for treatment and which procedures require such authorizations, NLMC will produce those redacted provisions upon either agreement on or entry by the Court of a suitable protective order regarding the confidentiality and non-disclosure of same.

REQUEST FOR PRODUCTION NO. 4:

Fee schedules between Northern and Blue Cross from August 19, 2014, through present date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

See objection and response to RFP No. 3.

REQUEST FOR PRODUCTION NO. 5:

Policies and procedures relating to the emergency department of Northern in effect on or about August 19, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Respondent submits that numerous such policies and procedures have been previously produced under separate cover.  Respondent will produce additional policies and procedures if and when identified by the plaintiffs.

REQUEST FOR PRODUCTION NO. 6:

Policies and procedures relating to the emergency department of Northern currently in effect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Please see response to Request for Production No. 5

EXHIBIT "2"

REQUEST FOR PRODUCTION NO. 7:

Policies and procedures relating to the radiology department of Northern in effect on or about August 19, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Respondent submits that numerous such policies and procedures have been previously produced under separate cover.  Respondent will produce additional policies and procedures if and when identified by the plaintiffs.

REQUEST FOR PRODUCTION NO. 8:

Policies and procedures relating to the radiology department of Northern currently in effect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

See response to Request No. 8.

REQUEST FOR PRODUCTION NO. 9:

All records contained, at any time, within the computer system of Northern related to Jordan Scott's admission to Northern on or about August 19, 2014, other than the certified medical records previously produced in the state-court litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant objects on the basis that this request is vague, ambiguous, and confusing. If plaintiff will more precisely define what it means, then defendant will supplement this response. Without waiving said objection, a copy of the billing records for Jordan Scott has been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 10:

All documents of any type and/or information of any type, including information maintained on any computer database, regarding any policy which existed on August 19, 2014, regarding a requirement that patients had to be admitted as an in-patient to Northern in order for an MRI to be ordered and/or performed on the patient.

EXHIBIT "2"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Respondent is unaware of any such documents and/or information.

REQUEST FOR PRODUCTION NO. 11:

All documents of any type and/or information of any type, including information maintained on any computer database, relating to Peer Review (or any other committee review) of Northern's policies, procedures, and/or practices regarding the ordering and performing of MRI's from its emergency department.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Respondent objects to Request for Production No. 11 insofar as it seeks information

which is privileged.  Documents related to Peer Review or any other committee are protected

from discovery under the Louisiana Peer Review Statute La. R.S. 13:3715.3.

REQUEST FOR PRODUCTION NO. 12:

Peer Review Meeting Minutes at Northern from January 1, 2014 through present date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

See response to No. 11.

REQUEST FOR PRODUCTION NO. 13:

Lists of CPT codes related to MRI's utilized by Northern over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

This information has been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 14:

Lists of CPT codes related to CT scans utilized by Northern over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

This information has been requested and will be provided upon receipt of same.

EXHIBIT "2"

REQUEST FOR PRODUCTION NO. 15:

Pages from Northern's Chargemaster related to reimbursement rates for MRI's at Northern.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Respondent objects insofar as the information requested may be considered privileged and proprietary. Notwithstanding objection and reserving same, this information has been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 16:

Pages from Northern's Chargemaster related to reimbursement rates for CT scans at Northern.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Respondent objects insofar as the information requested may be considered privileged and proprietary. Notwithstanding objection and reserving same, this information has been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 17:

Documents showing reimbursement rates for MRI's ordered from Northern's emergency room over the past five (5) years, not otherwise produced in response to the above requests for production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Respondent objects insofar as the information requested may be considered privileged and proprietary. Notwithstanding objection and reserving same, this information has been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 18:

Documents showing reimbursement rates for CT Scans ordered from Northern's emergency room over the past five (5) years, not otherwise produced in response to the above

EXHIBIT "2"

requests for production.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Respondent objects insofar as the information requested may be considered privileged and proprietary. Notwithstanding objection and reserving same, this information has been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 19:

Instructions, manuals, guidelines or other documents touching upon or related to the MEDHOST software utilized by Northern over the past five (5) years.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

These materials are provided online through CHS-PSC and MEDHOST.

REQUEST FOR PRODUCTION NO. 20:

Emails touching upon or related to MEDHOST from January 1, 2014, through December 31, 2014.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

Defendant objects to this interrogatory as vague and ambiguous in that "touching upon" is not defined.

REQUEST FOR PRODUCTION NO. 21:

Instructions, policies, procedures, and/or guidelines related to ordering MRI's at Northern over the past five (5) years.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Please see responses to previous requests for production and interrogatories. To the extent this information has not previously been produced, it has been requested and will be provided upon receipt of same if same exists.

EXHIBIT "2"

REQUEST FOR PRODUCTION NO. 22:

Documents, including emails, touching upon or related to the ordering of MRI's from Northern's emergency room over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Respondent objects insofar as Request No. 22 is overly broad, unduly burdensome, vague and ambiguous.  Notwithstanding objections and reserving same, this information has been requested and will be provided upon receipt of same if it exists.

REQUEST FOR PRODUCTION NO. 23:

Instructions, policies, procedures, and/or guidelines related to "precertification" at Northern over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Respondent objects insofar as Request No. 23 is vague and ambiguous in that "pre-certification" is not defined.  Notwithstanding said objection and reserving same, physicians do not receive training or instruction on financial verification.

REQUEST FOR PRODUCTION NO. 24:

Documents evidencing any training given by Northern to its administrative staff, employees, contracts, and physicians regarding EMTALA compliance over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Respondent objects insofar as Request No. 24 seeks information which is private and privileged and protected from disclosure pursuant to the provisions of the Patient Safety and Quality Improvement Act, 42 C.F.R., Part 3.

REQUEST FOR PRODUCTION NO. 25:

Documents evidencing monies received by Northern from the federal or state government

or any governmental agency for promising to comply with, or actually comply with, EMTALA over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Respondent objects insofar as Request for Production No. 25 seeks information which is not relevant and is not calculated to lead to the likely discovery of admissible evidence. Notwithstanding objection and reserving same, NLMC does not receive monies from federal or state government or any governmental agencies for compliance with EMTALA.

REQUEST FOR PRODUCTION NO. 26:

Documents sent by Northern to any state or federal government or regulatory agency pursuant to EMTALA's reporting requirements over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

This information has been requested and will be provided upon receipt of same if there are any.

REQUEST FOR PRODUCTION NO. 27:

Documents evidencing Northern's compliance with EMTALA over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Respondent objects insofar as Request No. 27 is vague and ambiguous.  Every record documenting treatment of patients in the emergency department is potential evidence of compliance with EMTALA; however, such documentation cannot be produced as same is private, privileged, and confidential under HIPAA.  Not withstanding objection and reserving same, this information has been requested and will be provided upon receipt of same if same exists.

REQUEST FOR PRODUCTION NO. 28:

Documents evidencing any violation of EMTALA committed at Northern over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendant objects on the basis that said information is protected by the Peer review Statute cited above.

REQUEST FOR PRODUCTION NO. 29:

Documents, including emails, which mention or refer to Jordan Scott's treatment at Northern from August 17, 2014 through August 19, 2014 which have not otherwise already been produced.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Respondent is not aware of any additional requested documents other than the billing records and or possible Peer records, which are privileged.

REQUEST FOR PRODUCTION NO. 30:

Faxes and emails sent by and between Northern and Blue Cross on August 19, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Defendant objects to any such documents other than those that pertain to Jordan Scott on the grounds that disclosure of any such records for other patients is protected from discovery by HIPPA. Any such documents regarding Jordan Scott have been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 31:

Phone records for incoming and outgoing calls between Northern and Blue Cross on August 19, 2014.

EXHIBIT "2"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Defendant objects to any such documents other than those that pertain to Jordan Scott on the grounds that disclosure of any such records for other patients is protected from discovery by HIPPA. Any such documents regarding Jordan Scott have been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 32:

Phone records for all incoming and outgoing calls at Northern on August 19, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Respondent objects insofar as Request No. 32 is overly broad and unduly burdensome. Furthermore, Request No. 32 is not relevant and not calculated to lead to the likely discovery of admissible evidence.  Finally, Respondent objects to any such documents other than those that pertain to Jordan Scott on the grounds that disclosure of any such records for other patients is protected from discovery by HIPPA. Notwithstanding objections and reserving same, any such documents regarding Jordan Scott have been requested and will be provided upon receipt of same.

REQUEST FOR PRODUCTION NO. 33:

Reports and documentation to and from Quality Improvement Organizations and Northern over the past five (5) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendant objects on the basis that discovery of such documentation is prohibited by the Louisiana Peer Review Statute cited above.

REQUEST FOR PRODUCTION NO. 34:

All documents identified in response to the preceding Interrogatories not otherwise

EXHIBIT "2"

produced in response to any of the more specific requests above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

All such documents have been attached. Or will be attached upon receipt of same.

REQUEST FOR PRODUCTION NO. 35:

All expert reports, including CV's and all other information required under FRCP Rule 26, for any experts you anticipate calling to trial at this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

None have been retained at this time, but defendant reserves the right to timely supplement this response.

REQUEST FOR PRODUCTION NO. 36:

A privilege log of all documents withheld on the basis of any privilege.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Respondent is preparing this privilege log and will provide same upon production of supplemental responses as noted above.

Respectfully submitted,
BLUE WILLIAMS, L.L.P.


_____/s/ Kelly M. Brian_____
KURT S. BLANKENSHIP  #3131
ROBERT I. BAUDOUIN #14069
RICHARD E. GRUNER, JR. #21630
KELLY M. BRIAN #31064
3421 North Causeway Boulevard, Suite 900
Metairie, Louisiana 70002
Telephone: (504) 830-4921
Telefax:  (504) 849-3049
Attorneys for Defendant, Northern
Louisiana Medical Center

EXHIBIT "2"

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify by my signature below that I have on this 16th day of January 2017, served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic mail, or  by mailing same by United States Mail, properly addressed, and first class postage prepaid.

*/s/ Kelly M. Brian*
**KELLY M. BRIAN**

EXHIBIT "2"