## U.S. DISTRICT COURT * W.D. LOUISIANA * MONROE DIVISION

**GREGORY SCOTT,** *et al.*

**DOCKET NO.: 3:16-cv-00376**

*versus*

 **JUDGE: S. Maurice Hicks**

**NORTHERN LOUISIANA MEDICAL CENTER,** *et al.*

**MAG. JUDGE: Karen Hayes**

---

### SUPPLEMENTAL RESPONSES BY NORTHERN LOUISIANA MEDICAL CENTER TO PLAINTIFFS' FIRST SET OF DISCOVERY

---

NOW INTO COURT, through undersigned counsel, comes Ruston Louisiana Hospital Company, LLC d/b/a Northern Louisiana Medical Center, who now provides supplemental responses to the *Plaintiffs' First Set of Discovery to Northern* as follows, subject to the objections earlier made, reserving all rights to amend and supplement said responses at a later date:

### *ANSWER TO INTERROGATORIES*

INTERROGATORY NO. 5:

With respect to MEDHOST software at Northern, please provide answers to the following questions:

(i)     Who ordered it?

(ii)    Who installed it in Northern's emergency department, and when?

(iii)   Who decided what options would and would not be available on the MEDHOST screens used in Northern's emergency department?

(iv)    What modifications, if any, have been made to MEDHOST's software in Northern's emergency department over the past two (2) years?

### ORIGINAL ANSWER TO INTERROGATORY NO. 5:

(i)     MEDHOST was ordered by CHS Professional Services Corporation LLC (CHS-

PSC), an entity with whom the hospital has a management agreement.

EXHIBIT "3"

(ii)     MEDHOST was installed by CHS-PSC with the assistance of a team sent by MEDHOST to work with NLMC's IT department

(iii)    CHS-PSC and MEDHOST control the options "build" of EDIS.  The EDIS system in the emergency department was deployed "out of the box."

(iv)    This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 5:**

(iv)    In early 2017, pursuant to a request from an emergency department physician, an "MRI button" was added to the EDIS software.

**ORIGINAL ANSWER TO INTERROGATORY NO. 14:**

This information has been requested and will be provided upon receipt of same.

**SUPPLMENTAL ANSWER TO INTERROGATORY NO. 14:**

Please see attached document identifying all CPT codes utilized by NLMC for MRIs and CT Scans over the past five (5) years.

INTERROGATORY NO. 15:

Identify all CPT codes utilized by Northern, including its emergency department, for CT scans over the past five (5) years.

**ORIGINAL ANSWER TO INTERROGATORY NO. 15:**

Information responsive to this has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 15:**

Please see attached document identifying all CPT codes utilized by NLMC for MRIs and CT Scans over the past five (5) years.

***RESPONSE TO REQUESTS FOR PRODUCTION***

REQUEST FOR PRODUCTION NO. 13:

EXHIBIT "3"

Lists of CPT codes related to MRI's utilized by Northern over the past five (5) years.

**ORIGINAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Please see attached document identifying all CPT codes utilized by NLMC for MRIs and

CT Scans over the past five (5) years.

REQUEST FOR PRODUCTION NO. 14:

Lists of CPT codes related to CT scans utilized by Northern over the past five (5) years.

**ORIGINAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Please see attached document identifying all CPT codes utilized by NLMC for MRIs and

CT Scans over the past five (5) years.

REQUEST FOR PRODUCTION NO. 15:

Pages from Northern's Chargemaster related to reimbursement rates for MRI's at Northern.

**ORIGINAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant objects to this Request on that basis that it is overly broad, vague, and seeks

information that is highly proprietary and confidential. Without waiving said objection, NLMC

will produce those reimbursement rates for MRI's upon entry by the Court of a suitable protective

order regarding the confidentiality and non-disclosure of same.

REQUEST FOR PRODUCTION NO. 16:

EXHIBIT "3"

Case 3:16-cv-00376-SMH-KLH   Document 53-5   Filed 02/17/17   Page 4 of 11 PageID #:  1265

Pages from Northern's Chargemaster related to reimbursement rates for CT scans at Northern.

**ORIGINAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this Request on that basis that it is overly broad, vague, and seeks information that is highly proprietary and confidential. Without waiving said objection, NLMC will produce those reimbursement rates for CT scans upon  entry by the Court of a suitable protective order regarding the confidentiality and non-disclosure of same.

REQUEST FOR PRODUCTION NO. 17:

Documents showing reimbursement rates for MRI's ordered from Northern's emergency room over the past five (5) years, not otherwise produced in response to the above requests for production.

**ORIGINAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant objects to this Request on that basis that it is overly broad, vague, and seeks information that is highly proprietary and confidential. Without waiving said objection, NLMC will produce those reimbursement rates for MRI's upon entry by the Court of a suitable protective order regarding the confidentiality and non-disclosure of same.

REQUEST FOR PRODUCTION NO. 18:

Documents showing reimbursement rates for CT Scans ordered from Northern's emergency room over the past five (5) years, not otherwise produced in response to the above requests for production.

EXHIBIT "3"

**ORIGINAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

This information has been requested and will be provided upon receipt of same.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendant objects to this Request on that basis that it is overly broad, vague, and seeks information that is highly proprietary and confidential. Without waiving said objection, NLMC will produce those reimbursement rates for CT scans upon entry by the Court of a suitable protective order regarding the confidentiality and non-disclosure of same.

Respectfully submitted,
BLUE WILLIAMS, L.L.P.

_____

KURT S. BLANKENSHIP  #3131
ROBERT I. BAUDOUIN #14069
RICHARD E. GRUNER, JR. #21630
KELLY M. BRIAN #31064
3421 North Causeway Boulevard, Suite 900
Metairie, Louisiana 70002
Telephone: (504) 830-4921
Facsimile:  (504) 849-3049
Attorneys for Defendant, Northern
Louisiana Medical Center & James Patrick
Taylor, M.D.

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that I have on this _____day of January 2017, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing same by United States Mail, properly addressed, and first class postage prepaid.

_____

EXHIBIT "3"

**KELLY M. BRIAN**

EXHIBIT "3"

3RD JUDICIAL DISTRICT COURT FOR THE PARISH OF LINCOLN

STATE OF LOUISIANA

NUMBER:  288                                           DIVISION:

GREGORY SCOTT, ET AL

VERSUS

NORTHERN LOUISIANA MEDICAL CENTER, ET AL

FILED:_____     _____
                                                              DEPUTY CLERK

**SUPPLEMENTAL RESPONSES BY NORTHERN LOUISIANA MEDICAL CENTER
TO PLAINTIFFS' FIRST SET OF DISCOVERY**

NOW INTO COURT, through undersigned counsel, comes Ruston Louisiana Hospital

Company, LLC d/b/a Northern Louisiana Medical Center, who now responds to the *Plaintiffs'*

*First Set of Discovery to Northern* as follows, reserving all rights to amend and supplement said

responses at a later date:

**GENERAL OBJECTIONS**

Defendant presents the following General Objections.  Defendant does not waive any of

the General Objections in response to any specified discovery request propounded.  All of

Defendant's responses are subject to these general objections.  The General Objections are as

follows:

1.  Defendant objects to these discovery requests to the extent that they attempt to
    impose upon them any obligation not set forth in the La. Code of Civil Procedure or
    the Federal Rules of Civil Procedure.

2.  Defendant objects to these discovery requests to the extent that they are vague,
    ambiguous, overly oppressive, unduly burdensome, onerous, or expensive to answer,
    and are not reasonably calculated to lead to the discovery of admissible evidence.

3.  Defendant objects to these discovery requests to the extent that they seek information
    or documentation protected from disclosure by the work-product doctrine, the

EXHIBIT "3"

attorney-client privilege, or any other privilege or rule of confidentiality. Defendant also objects to the extent the discovery seeks the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the defendant.

4. Defendant objects to these discovery requests to the extent that the propounded discovery purports to require defendant to identify information withheld on the grounds of privilege that is inconsistent with his/her assertion of a privilege.

5. Defendant objects to these discovery requests to the extent that they seek information that is not in their possession, custody or control.

6. Defendant objects to these discovery requests to the extent that they impose upon them an unreasonable and unduly burdensome investigation to obtain information that is, or ought to be, in defendant's possession or control or is equally available to either party. Such propounded discovery is overly broad, unduly burdensome, oppressive and not reasonably calculated to lad to the discovery of admissible evidence.

7. Defendant objects to these discovery requests to the extent that they call for proprietary and/or confidential business information.

8. Defendant objects to these discovery requests to the extent that they seek information that is overly broad in time or scope.

9. Defendant objects to these discovery requests to the extent that they call for a conclusion of law or any other non-fact related conclusion and, as such, are inappropriate for discovery requests. The scope of discovery is limited to seeking information concerning operative facts.

10. Defendant objects to these discovery requests to the extent that the requested information is confidential and invasive of the privacy interest of non-parties to this litigation.

11. Defendant objects to any discovery request that requires it to identify and produce documents that will "support" particular facts on the grounds that the responses are protected by the attorney-work product doctrine and/or attorney-client privilege, or any other privilege or rule of confidentiality.

12. Defendant objects to any discovery to the extent that it seeks information that is not relevant to the subject matter of the litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

## *ANSWER TO INTERROGATORIES*

**INTERROGATORY NO. 5:**

2

EXHIBIT "3"

With respect to MEDHOST software at Northern, please provide answers to the following questions:

    (i)       Who ordered it?

    (ii)      Who installed it in Northern's emergency department, and when?

    (iii)     Who decided what options would and would not be available on the MEDHOST screens used in Northern's emergency department?

    (iv)    What modifications, if any, have been made to MEDHOST's software in Northern's emergency department over the past two (2) years?

**ORIGINAL ANSWER TO INTERROGATORY NO. 5:**

    (i)       MEDHOST was ordered by CHS Professional Services Corporation LLC (CHS-PSC), an entity with whom the hospital has a management agreement.

    (ii)      MEDHOST was installed by CHS-PSC with the assistance of a team sent by MEDHOST to work with NLMC's IT department

    (iii)     CHS-PSC and MEDHOST control the options "build" of EDIS.  The EDIS system in the emergency department was deployed "out of the box."

    (iv)    This information has been requested and will be provided upon receipt of same.

3

EXHIBIT "3"

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 5:**

        (v)    In early 2017, pursuant to a request from an emergency department physician, an "MRI button" was added to the EDIS software.   In addition, over the last two years, approximately 3000 pages (changes) were made to the MedHost EDIS software.   Many of these changes are pushed out by MedHost automatically. Some were specifically requested by NLMC.  Examples of those pushed out by MedHost automatically would include regulatory changes, CPT Code changes, etc.   Examples of changes requested by NLMC would be changes in a physician's physical address, Medicare billing number, etc.

**INTERROGATORY NO. 11:**

        Does Northern instruct or train any of its administrative staff on EMTALA? If "yes," explain in detail what training is given, by whom, and when. If "no," explain why no training is given. In answering this question, identify all witnesses and documents who will substantiate the response.

**ORIGINAL ANSWER TO INTERROGATORY NO. 11:**

        Information responsive to this request has been requested and will be provided upon receipt.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

        Defendant objects to this Interrogatory on the grounds that "administrative staff" is not defined, but without waiving said objection, NLMC responds that up until 2016, emergency room clerical and nursing personnel, business office personnel, and Labor & Delivery staff received training in EMTALA on initial hiring and also during annual re-orientations.  Starting at some point in 2016, all hospital non-physician staff began to receive EMTALA training on initial

4

EXHIBIT "3"

hiring and also during annual re-orientation.  The training consists of online learning modules prepared by the NLMC Department of Education and/or provided to NLMC by CHS-PSC, LLC.  Susan White, Risk Manager, and Kathy Roberts, Director of Clinical Education.   With regard to documents evidencing training, Defendant renews the objection stated in its original response to Plaintiffs' Request for Production No. 24.

Respectfully submitted,
BLUE WILLIAMS, L.L.P.

_____
KURT S. BLANKENSHIP #3131
ROBERT I. BAUDOUIN #14069
RICHARD E. GRUNER, JR. #21630
KELLY M. BRIAN #31064
3421 North Causeway Boulevard, Suite 900
Metairie, Louisiana 70002
Telephone: (504) 830-4921
Telefax:  (504) 849-3049
Attorneys for Defendant, Northern
Louisiana Medical Center & James Patrick
Taylor, M.D.

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that I have on this ____9th____ day of February 2017, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing same by United States Mail, properly addressed, and first class postage prepaid.

_____

EXHIBIT "3"