UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| GREGORY SCOTT AND MICHELLE SCOTT, INDIVIDUALLY AND ON BEHALF OF THE MINOR J.S. AS THE PARENTS AND TUTORS OF J.S. | CIVIL ACTION NO. 16-0376 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RUSTON LOUISIANA HOSPITAL COMPANY, LLC | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court are (1) Defendants Ruston Louisiana Hospital Company, LLC d/b/a Northern Louisiana Medical Center ("NLMC") and Brady DuBois' ("DuBois") (collectively "Defendants") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Record Document 10); (2) Magistrate Judge Hayes' Report and Recommendation on the Motion to Dismiss (Record Document 27); and (3) significant briefing by the parties regarding the Report and Recommendation (Record Documents 28, 30, 35, 38, 44, 45, and 48). For the reasons assigned in the Report and Recommendation (Record Document 27), having thoroughly reviewed the record, including the written objections filed, and concurring with the findings of the Magistrate Judge under the applicable law, the Court hereby **ADOPTS** the recommendations of the Magistrate Judge. In the instant Memorandum Ruling, the Court specifically addresses (1) Plaintiffs Gregory Scott and Michelle Scott's (collectively "Plaintiffs") arguments regarding the Report and Recommendation; (2) Plaintiffs' new evidence (Record Document 44-1); and (3) Plaintiffs' new authority (Record Document 44).

## FACTUAL AND PROCEDURAL BACKGROUND

NLMC is a healthcare services company that owns and operates a hospital with an emergency department in Ruston, Louisiana. See Record Document 1 at 1-2. DuBois was the CEO at the time of the events relevant to the instant action. See id. at 5. Plaintiffs are residents of Lincoln Parish, Louisiana, and parents of the minor J.S. See id. at 1.

In the early hours of August 19, 2014, J.S. presented to NLMC's emergency room with neurological deficiencies in both her upper and lower extremities. See id. at 2. By 9:07 AM, the attending emergency room physician, Dr. James Taylor ("Dr. Taylor"), wanted to order an MRI to evaluate J.S.'s condition. See id. However, no MRI was performed upon J.S. until after 3:00 PM. See id. Plaintiffs allege, based upon deposition testimony by Dr. Taylor, that the delay was the result of a policy at NLMC "that requires that emergency room requests for MRIs be summarily denied and delayed until reimbursement from the insurance company has been certified." Id. Plaintiffs allege that if the MRI had been performed at the time Dr. Taylor originally sought to perform it, the hematoma on J.S.'s spinal cord would have been identified and treated in enough time to prevent the permanent paralysis she later developed or that the severity of her symptoms would have been reduced. See id. at 2-3.

Plaintiffs first filed a state malpractice claim with the Louisiana Patient Compensation Fund, seeking review of the claim by a medical review panel as required by the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1, *et seq*. See Record Document 15 at 1. Plaintiffs took Dr. Taylor's deposition in that case, and discovered that they might have a claim under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et seq*. See id. Plaintiffs subsequently filed

the instant action in federal court on March 21, 2016, with the following causes of action: (1) EMTALA violations for inadequate medical screening, disparate screening, delay of appropriate medical screening, and delay of further medical examination and treatment; (2) violation of the Louisiana Anti-Dumping Statute ("LADS"), La. R.S. § 40:2113.4-6; (3) negligent administration under state tort law; (4) malfeasance under state tort law; and (5) "intentional action" by "sanitizing" medical records. Id. at 8-13. Plaintiffs also affirmatively alleged that any damages awarded for their EMTALA claims are not subject to the LMMA's damages caps. See id. at 9.

On May 6, 2016, Defendants filed the instant Rule 12(b)(6) Motion to Dismiss seeking (1) complete dismissal of all of Plaintiffs' claims, with prejudice, or (2) alternatively, a stay of all of Plaintiffs' claims pending a decision by the medical review panel in the separate state medical malpractice case in its Motion to Dismiss. See Record Document 10 at 1. Defendants also argued that "the plaintiffs' claims sounding in medical negligence, which defendants submit encompasses all complaints made herein, are premature." Record Document 10-2 at 3. After extensive briefing on the Motion, Magistrate Judge Hayes issued a Report and Recommendation recommending that the Motion be granted in part with the following disposition:

1) Dismissal of Plaintiffs' intentional tort claims with prejudice;
2) Dismissal of Plaintiffs' EMTALA claims against DuBois with prejudice;
3) Dismissal of Plaintiffs' claim that their EMTALA claims are not subject to the LMMA's damages caps with prejudice;
4) Dismissal of Plaintiffs' claims under LADS and for negligence and malfeasance without prejudice as premature because they fall under the LMMA's definition of medical malpractice and therefore must first be presented to a medical review panel.

See Record Document 27 at 26-27. It also recommended staying the instant action pending the outcome of the related medical review panel in the state malpractice case.

See id. Finally, it recommended that the Motion be denied with respect to Plaintiffs' EMTALA claims against NLMC, leaving the EMTALA claims against NLMC as the only remaining claims in the instant action.[1] After the Magistrate Judge issued her Report and Recommendation, the parties have gone through several rounds of briefing regarding its recommendations, and the matter is ripe for a decision by this Court. See Record Documents 28, 30, 35, 38, 44, 45, and 48.

<h2 style="text-align:center">LAW AND ANALYSIS</h2>

**I.   Legal Standards**

   **A. Standard of Review for Magistrate Judge Hayes' Report and Recommendation**

When a District Court refers a dispositive matter like a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted to a Magistrate Judge, the Magistrate Judge is required to enter a recommended disposition of the matter into the record. See 26 U.S.C. § 636(b)(A) and (B); see Fed. R. Civ. P. 72(b). Any party may then object to the Magistrate Judge's recommendations. See 26 U.S.C. § 636(b)(C). The District Court must then "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

   **B. The Rule 12(b)(6) Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain

---

[1] The parties' Joint Statement of the Case, which they provided to this Court after the previous District Judge assigned to this case recused himself, erroneously states that the state law negligent administration and malfeasance claims against NLMC and DuBois will remain if the Report and Recommendation is accepted. See Record Document 49 at 4. However, the Report and Recommendation clearly recommends that all of these claims against both NLMC and DuBois be dismissed without prejudice. See Record Document 27 at 26-27.

statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-556. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Iqbal, 556 U.S. at 678 (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must also accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

## II. Analysis

Plaintiffs vehemently disagreed[2] with Magistrate Judge Hayes' analysis of Defendants' Motion to Dismiss, offering numerous arguments to rebut the conclusions in the Report and Recommendation. See Record Documents 28, 28-1, and 35. Defendants responded to these arguments. See Record Documents 30 and 38. Plaintiffs also submitted new evidence and new authority to support their contentions, and Defendants responded to these as well. See Record Documents 44, 44-1, 45, and 48. In this section, the Court addresses Plaintiffs' arguments against the Report and Recommendation, new evidence, and new authority, and finds that none of Plaintiffs' arguments on these three bases alter the Court's conclusion that the Report and Recommendation is correct.

### A. Magistrate Judge Hayes Correctly Applied the Rule 12(b)(6) Standard in Determining that the LMMA's Damages Caps Apply to EMTALA Claims.

Plaintiffs argue that Magistrate Judge Hayes misapplied the Rule 12(b)(6) standard by making six inferences that are adverse to Plaintiffs' claims. See Record Document 28. This alleged misapplication occurred in the analysis of Plaintiffs' factual allegations under the six factors outlined in Coleman v. Deno, 813 So. 2d 303, 315-16 (La. 01/25/02), which courts must use to determine whether a plaintiff's allegations fall within the scope of the LMMA's provisions. See La. R.S. 40:1231.1, *et seq*.

A brief discussion of the interaction between EMTALA and the LMMA is necessary to understand why the Magistrate Judge engaged in this six-factor analysis under state law in analyzing a Motion to Dismiss a federal cause of action. EMTALA is a federal

---

[2] Indeed, some of the language used in Plaintiffs' objections to the Report and Recommendation to describe the Magistrate Judge's conclusions is unprofessional and unwarranted. See Record Document 28-1.

statute regulating the provision of emergency medical services and creating a private cause of action for a violation of its terms. See 42 U.S.C. § 1395dd(d)(2)(A). The LMMA is a state statute regulating a specific subset of delictual (tort) actions in Louisiana, setting caps on the amount on damages recoverable in this subset of actions, and setting forth specific procedures that must be followed in pursuing such actions. See, e.g., La. R.S. §§ 40:1231.2 (damages caps) and 40:1231.8 (requirement to submit all medical malpractice claims to a medical review panel prior to filing suit). Though EMTALA expressly preempts state or local law requirements that directly conflict with any of its provisions in 42 U.S.C. § 1395dd(f), it also expressly defers to state law for determination of the damages available for a breach of its terms in creating the civil cause of action for a violation of its terms:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain *those damages available for personal injury under the law of the State in which the hospital is located*, and such equitable relief as is appropriate

42 U.S.C. § 1395dd(d)(2)(A) (emphasis added). The statute of limitations for filing such a civil action is two years after the date of the violation. See 42 U.S.C. § 1395dd(d)(2)(C).

Thus, as the Report and Recommendation states, courts have been confronted with questions regarding the extent to which the requirements and limitations of state medical malpractice statutes like the LMMA apply to EMTALA actions. See Record Document 27 at 10-20. The Motion to Dismiss and Report and Recommendation address two such questions: (1) whether the procedural requirements of the LMMA apply, and (2) whether the damages caps of the LMMA apply. See id.

The analysis of the first question is somewhat straightforward. EMTALA itself contains no procedural requirements like the medical review panel requirement of the LMMA. EMTALA expressly preempts state law to the extent that it "directly conflicts" with EMTALA. 42 U.S.C. § 1395dd(f). Federal courts have held that the procedural requirements of similar state medical malpractice statutes do not apply to EMTALA claims, and the Louisiana Supreme Court has specifically held that EMTALA preempts the LMMA's medical review panel requirement. See Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 865-66 (4th Cir. 1994); see Spradlin v. Acadia-St. Landry Med. Found., 758 So. 2d 116, 122-23 (La. 02/29/00). Thus, though these cases are not binding upon the Court in interpreting a federal statute, Magistrate Judge Hayes agreed with their analysis and held that the procedural requirements of the LMMA do not apply to Plaintiffs' EMTALA claim, meaning that Plaintiffs were not required to submit the EMTALA claim to a medical review panel before filing the instant action. See Record Document 27 at 10-12.

The analysis of the second question, however, is more complicated. The Report and Recommendation notes that though the issue of the extent of recoverable damages would not normally arise in the context of a Rule 12(b)(6) motion, it arises at this stage in the instant action because Plaintiffs' complaint specifically alleges that their EMTALA claims are not subject to the LMMA's damages caps, and Defendants filed a Motion to Dismiss all of Plaintiffs' claims. See Record Documents 1 at ¶ 13, 10 at 1, and 27 at 13 n.8. There is no direct conflict between the LMMA's damages caps and EMTALA, as EMTALA expressly defers to state law on the question of damages. See 42 U.S.C. § 1395dd(d)(2)(A). Most federal courts confronting the question "have held that EMTALA's incorporation of state law extends to caps on damages for medical malpractice

claims so long as the challenged conduct falls within the particular state's definition of malpractice." Record Document 27 at 13, citing, *inter alia*, Power, 42 F.3d at 862-64. Thus, whether the LMMA's damages caps apply to the instant EMTALA action turns upon whether the allegations in the complaint state a malpractice claim under the LMMA. Under Louisiana law, courts decide that question in part by analyzing the six factors set forth in Coleman v. Deno, 813 So. 2d 303, 315 (La. 2002). It is the Magistrate Judge's analysis of these six factors that Plaintiffs find to be "clear error" and misapplication of the Rule 12(b)(6) standard.[3] Record Document 28-1 at 4.

To the contrary, the Court finds the Magistrate Judge's analysis of these factors to be entirely appropriate. Though Plaintiffs contend that making this determination at such an early stage "evinces a clear disregard for the liberal pleading standard," federal courts routinely have to determine whether the LMMA's requirements are applicable to a particular set of allegations. Id. at 2. For example, in Harper v. Bio-Medical Applications of La., LLC, 2014 U.S. Dist. LEXIS 109754 (W.D. La. 2014) (Hicks, J.), this Court performed the exact same six-factor analysis to determine whether the plaintiff's allegations constituted general negligence allegations or "medical malpractice" allegations such that they were subject to the LMMA's procedural requirements. Louisiana district courts conduct a similar analysis based upon the pleadings when a defendant files an exception of prematurity contending that a plaintiff's factual allegations

---

[3] Plaintiffs use terms like "clear error" and "manifestly erroneous" to describe the Magistrate Judge's recommendations in an apparent attempt to emphasize the extent to which they disagree with these recommendations. See Record Document 28-1 at 4, 6. Though some decisions of a Magistrate Judge are reviewed for clear error, the Court is required to afford no deference to the Magistrate Judge's decisions here under a *de novo* standard of review. See Fed. R. Civ. P. 72(a) and (b); see 28 U.S.C. § 636(b)(1)(C). The Court has done so in the instant Memorandum Ruling despite the Plaintiffs' use of these terms that are better suited to other, more deferential standards of review.

constitute medical malpractice allegations. See <u>Billeaudeau v. Opelousas Gen. Hosp. Auth.</u>, 2016 La. LEXIS 2082 at *22-23 (La. 10/19/16) ("a court in its trial of the exception would analyze the allegations of the petition under <u>Coleman</u> to determine whether they sound in medical malpractice . . . or general negligence"). Thus, both state and federal courts often have to determine whether a plaintiff's allegations fall under the LMMA at the pleadings stage.

The Court also finds no error in the application of the factors themselves. Rather than argue against the substance of the Magistrate Judge's analysis of the factors under the facts pleaded in the complaint, Plaintiffs' primary objection is that the Magistrate Judge misapplied the Rule 12(b)(6) standard in analyzing these factors by making inferences adverse to the factual allegations in their complaint. See Record Document 28-1 at 2-3. Plaintiffs argue that because they "have specifically alleged an 'intentional' policy which 'deliberately' places profits-over-patients that is 'unrelated' to medical judgment," the Court is required to accept these allegations as true at the Rule 12(b)(6) stage and conclude that Plaintiffs' allegations do not fall under the LMMA. Record Document 28-1 at 2.

This argument misstates the Rule 12(b)(6) standard under <u>Twombly</u> and <u>Iqbal</u>. Those cases state that the Court must accept pleaded *facts* as true, but it need not accept *legal conclusions* as facts. See <u>Iqbal</u>, 556 U.S. at 679 ("while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). In other words, when a plaintiff makes factual allegations regarding a defendant's actions, such as an allegation that a specific person took an action at a particular time in a particular place, the Court must take those allegations as true. However, when the plaintiff

makes legal conclusions on the basis of those actions or merely pleads legal conclusions in the absence of any supporting factual allegations, the Court does not have to take those conclusions as true. See Walker v. Caddo Parish Sheriff's Office, 2016 U.S. Dist. LEXIS 130414 at *7-9 (W.D. La. 2016) (addressing the difference between factual allegations and the legal conclusions that form the framework for a complaint).

The factual allegations in the instant complaint are, in short, that on August 19, 2014, J.S. presented to NLMC with spinal pain, and though Dr. Taylor ordered an MRI for her, she did not receive that MRI until seven hours later due to NLMC's policy of delaying MRIs for patients for whom NLMC could not immediately obtain confirmation that their health insurance would pay for the procedure. See Record Document 1. The allegations that Defendants' actions were "intentional" and "deliberate" are legal conclusions as to Defendants' state of mind in enacting their policies. Record Document 28-1 at 2. The allegation that these actions were "unrelated to medical judgment" is a legal conclusion that one of the six Coleman factors weighs in favor of finding that the factual allegations in the complaint do not constitute allegations of "medical malpractice" within the meaning of the LMMA. Id. Thus, Magistrate Judge Hayes' analysis, which accepted all of the *factual* allegations in the complaint as true in analyzing the six Coleman factors[4], was a faithful application of the Rule 12(b)(6) standard even though it did not accept Plaintiffs' *legal conclusions* that Defendants' actions were "intentional," "deliberate," or "unrelated to medical judgment." Record Document 28-1 at 2.

---

[4] The Court notes that the Magistrate Judge appropriately first held that the statutory definition of medical malpractice in La. R.S. § 40:1231.1A(13) is broad enough to encompass the factual allegations in the complaint before analyzing the Coleman factors. See Record Document 27 at 15-16. The Court focuses on the Magistrate Judge's analysis of the Coleman factors because that is the analysis with which Plaintiffs take issue in their objections to the Report and Recommendation. See Record Documents 28 and 28-1.

### B. Plaintiffs' New Authority Does Not Alter the Court's Conclusion that Magistrate Judge Hayes' Recommendation to Dismiss Several of Plaintiffs' State Law Causes of Action Without Prejudice Was Correct.

After analyzing Plaintiffs' factual allegations under the Coleman factors, the Magistrate Judge also analyzed Plaintiffs' state law causes of action under the LADS and for negligent administration, malfeasance, and "intentional action" in deciding the Motion to Dismiss. See Record Document 21. The Magistrate Judge found that because these causes of action were based upon the same factual allegations as Plaintiffs' EMTALA claims, "the court's application of the Coleman factors to plaintiffs' EMTALA claims necessarily compels a finding that plaintiffs' state law claims against NLMC under LADS, for negligent administration, and for malfeasance also sound in medical malpractice, thereby subjecting the claims to the LMMS's medical review panel exhaustion requirement." Id. Thus, the Magistrate Judge recommended that these state law causes of action be dismissed without prejudice so that they may first be presented to a medical review panel in accordance with the procedural requirements of the LMMA. See id. The Report and Recommendation also recommends dismissal of Plaintiffs' "intentional action" cause of action on the basis of "sanitizing" medical records with prejudice, as no pleaded facts support this cause of action. See id. at 23.

Plaintiffs argue that the Louisiana Supreme Court's recent decision in Billeaudeau v. Opelousas Gen. Hosp., 2016 La. LEXIS 2082 (La. 10/19/16), decided after the issuance of the Magistrate Judge's Report and Recommendation, "addresses issues squarely before the Court" in the instant action and supports their arguments against the Magistrate Judge's recommendation on both these state law causes of action and their EMTALA claims. Record Document 44 at 1. Plaintiffs argue that because the Court in

Billeaudeau held that a negligent credentialing claim does not constitute a medical malpractice claim such that the LMMA's damages caps apply, "the Magistrate's suggestion that Plaintiffs' EMTALA claim should be 'capped' and that their state-law claims of administrative negligence should be 'dismissed' are clearly erroneous and, now, completely contradicted by Louisiana Supreme Court jurisprudence." Record Document 44 at 2.

The Magistrate Judge addressed the Louisiana Third Circuit Court of Appeal's decision in Billeaudeau v. Opelousas Gen. Hosp. Auth., 189 So. 3d 561 (La. App. 3 Cir. 04/06/16) in her Report and Recommendation, and incorrectly predicted that the Louisiana Supreme Court would reverse its holding, partially basing her "Erie guess" as to whether the negligent credentialing claim fell under the LMMA upon this prediction. See Record Document 27 at 21-22 n.18; see Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.), 495 F.3d 191, 206 (5th Cir. 2007) (under the Erie doctrine, in the absence of a Louisiana Supreme Court decision on a state law question, federal courts must make their best guess as to how the Louisiana Supreme Court would decide that question). Thus, Plaintiffs argue that because this prediction was incorrect, the Court should reject Magistrate Judge's recommendation. See Record Document 44.

This Court does not read Billeaudeau as broadly as Plaintiffs. From the outset of the Louisiana Supreme Court's opinion, it is clear that the particular question at issue was not whether all "negligent administration" claims fall under the LMMA, as Plaintiffs argue, but rather whether a "negligent credentialing" claim falls under the LMMA. See Record Document 44; see Billeaudeau, 2016 La. LEXIS 2082 at *1 ("this civil case presents the singular, *res nova* issue of whether a claim for negligent credentialing falls within the

purview of the [LMMA]"). In other words, though negligent credentialing may be a subset of the broader category of negligent administration, the Billeaudeau opinion dealt with the narrow question of whether negligent credentialing claims fall under the LMMA, not whether the broad category of all negligent administration claims fall under the LMMA. The Billeaudeau Court's summary of the factual allegations supporting the negligent credentialing claim shows that Billeaudeau dealt only with a negligent credentialing claim, not with the broader category of all claims that could be considered negligent administration. See Billeaudeau, 2016 La. LEXIS 2082 at *22-23. Additionally, the Louisiana Supreme Court's analysis of the Coleman factors as applied to these factual allegations is focused solely upon negligent credentialing, and the Court distinguishes that case from others that could arguably fall under the broader category of negligent administration. See id. at *25-26, distinguishing Dupuy v. NMC Operating Co., L.L.C., 187 So. 3d 436 (La. 03/15/16).

Plaintiffs may be able to find some support for their arguments in the Louisiana Supreme Court's extensive analysis of the Coleman factors in Billeaudeau. See id. at *23-39. Indeed, these factors "can be artfully argued either way." Id. at *27. However, the Court finds that (1) the fact that the Magistrate Judge made an incorrect prediction about the Louisiana Supreme Court's resolution of Billeaudeau does not render her ultimate conclusions incorrect, and (2) Billeaudeau is sufficiently distinguishable from the instant action, particularly on the third Coleman factor of "whether the pertinent act or omission involved assessment of the patient's condition," such that it does not affect the Court's conclusion that the Magistrate Judge's recommendations are correct. Id. at *31-32.

### C. Plaintiffs' "New Evidence" Cannot Be Considered in Deciding a Rule 12(b)(6) Motion.

Plaintiffs also submitted "new evidence" in the form of the 204-page deposition of Dr. Edward Calvert ("Dr. Calvert"), another emergency room doctor at NLMC. See Record Document 44-1. Plaintiffs argue that Dr. Calvert's deposition testimony, which was given after the Magistrate Judge issued the Report and Recommendation, requires that the Court reject the Magistrate Judge's recommendations. See Record Document 45. Specifically, Plaintiffs argue that Dr. Calvert's testimony that the conduct complained of by Plaintiffs (1) is not treatment related, (2) did not require an assessment of J.S.'s condition, and (3) did not arise in the context of a physician-patient relationship requires that this Court reject the Magistrate Judge's conclusion that Plaintiffs' factual allegations fall under the LMMA's definition of malpractice. See id. at 8.

The Court disagrees. First, the Court may not consider this deposition testimony in deciding the instant Motion to Dismiss. Generally, a court may not go outside of the pleadings in deciding such a motion. See Colle, 981 F.2d at 243. However, a court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey, 540 F.3d at 338. "Documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). Dr. Calvert's deposition, which was taken long after Plaintiffs filed their complaint in the instant action, meets none of these criteria. Thus, the Court may not consider it.

Second, even if the Court did consider Dr. Calvert's deposition testimony, it would not alter the Court's decision. As explained in Section II, A, *supra*, the Court is not required

to accept as true legal conclusions regarding the application of the Coleman factors to the factual allegations in the instant action. That is true whether the legal conclusions come from the complaint itself, arguments in motions, or an emergency room doctor like Dr. Calvert. Obviously, Plaintiffs simply asked Dr. Calvert questions in his deposition regarding the application of these factors in an attempt to bolster their objections to the Report and Recommendation, as all three of Dr. Calvert's statements listed above are conclusions regarding the Coleman factors. See Coleman, 813 So. 2d at 315-16. With due respect to Dr. Calvert's opinions, upon which this Court makes no substantive comment, the application of those factors is a matter for the Court to decide at this stage of the proceedings. Therefore, the Plaintiffs' "new evidence" does not alter the Court's decision on the instant Motion to Dismiss.

### D. Magistrate Judge Hayes' Decision to Stay the Instant Matter Pending the Decision of the Medical Review Panel Is Not Manifestly Erroneous.

Plaintiffs argue that Magistrate Judge Hayes' decision to stay the instant action pending the release of the state medical review panel's decision on the related medical malpractice action was "manifestly erroneous." Record Document 28-1 at 6. The Court disagrees. The Magistrate Judge fully explained the standards for exercising the Court's discretion to stay proceedings before the Court. See Record Document 27 at 25-26, citing, *inter alia*, Falgoust v. Microsoft Corp., 2000 U.S. Dist. LEXIS 5417 (E.D. La. 2000) (listing factors to be considered in exercising this discretion). Despite recognizing the fact that Plaintiffs "have a keen interest in the timely resolution of their EMTALA claim," the Magistrate Judge stated that "given the relatedness of [the EMTALA claim and the medical malpractice claims], it is in the strong interest of judicial economy to stay the instant EMTALA proceedings pending a determination by the medical review panel on

the malpractice claim." Id. at 25. Though the Court recognizes, like the Magistrate Judge, that other courts have decided similar issues differently, the Court nonetheless agrees with this assessment of the factors to be considered in issuing a stay, and therefore finds no error in the Magistrate Judge's decision. See id. at 26 n.24 (recognizing that the court in Jeff v. Universal Health Servs., 2005 U.S. Dist. LEXIS 17819 at *7-9 (E.D. La. 2005) reached the opposite conclusion, but disagreeing with its analysis).

### E. Magistrate Judge Hayes' Report and Recommendation Did Not Convert the Motion to Dismiss to a Motion for Summary Judgment.

Finally, Plaintiffs argue that the Magistrate Judge erred by allegedly converting Defendants' Motion to Dismiss into a Motion for Summary Judgment without any request to do so by Defendants. See Record Document 28 at 2. The relevant portion of the Report and Recommendation with respect to this argument is as follows:

> To the extent that the undersigned has expanded upon the grounds of dismissal urged by movants, the court may always grant summary judgment *sua sponte* so long as the adverse party receives adequate notice and a reasonable time to respond. [citations omitted]. The instant report and recommendation provides adequate notice to the parties. [citations omitted].

Record Document 27 at 26.

The Court interprets this statement as essentially stating that, to the extent the Report and Recommendation recommends a disposition that slightly differs from the relief requested in Defendants' Motion to Dismiss, then the Court is free to grant such relief in a *sua sponte* summary judgment so long as the parties have a chance to object to the Report and Recommendation. Defendants specifically sought (1) complete dismissal of all of Plaintiffs' claims, with prejudice, or (2) alternatively, a stay of all of Plaintiffs' claims pending a decision by the medical review panel in the separate state medical malpractice

case in its Motion to Dismiss. See Record Document 10 at 1. The Report and Recommendation recommends a different disposition, with one claim being dismissed with prejudice, several being dismissed without prejudice, and others surviving dismissal but stayed pending a medical review panel decision in the separate state malpractice case. Thus, to the extent that this relief does not match the relief requested in the Motion to Dismiss, the above-quoted language regarding *sua sponte* summary judgment simply sought to justify the granting of this relief absent a request for this exact disposition.

The Court agrees with the disposition recommended by the Report and Recommendation. In the Court's view, this disposition is entirely proper in granting a Rule 12(b)(6) Motion to Dismiss under these facts. This is particularly true in light of the fact that, though not mentioned in the same section of its Motion to Dismiss as its other requests for relief, Defendants also argued that "the plaintiffs' claims sounding in medical negligence, which defendants submit encompasses all complaints made herein, are premature." Record Document 10-2 at 3. However, even if granting the relief granted in the instant Memorandum Ruling constitutes a *sua sponte* summary judgment, such a judgment is within the Court's power, and all parties have been provided ample opportunity to respond to the Report and Recommendation. See Fed. R. Civ. P. 56(f)(3); see McCoy v. Wade, 2007 U.S. Dist. LEXIS 29467 at *3 (W.D. La. 2007).

## CONCLUSION

For the reasons assigned in the Report and Recommendation (Record Document 27), having thoroughly reviewed the record, including the written objections filed, and concurring with the findings of the Magistrate Judge under the applicable law, the Court hereby **ADOPTS** the recommendations of the Magistrate Judge. Thus, Defendants' Rule

12(b)(6) Motion to Dismiss (Record Document 10) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion with respect to Plaintiffs' EMTALA claims against NLMC is **DENIED**. Plaintiffs' other claims are disposed of in the following manner:

1) Plaintiffs' state law intentional tort claims are **DISMISSED WITH PREJUDICE**;

2) Plaintiffs' EMTALA claims against DuBois are **DISMISSED WITH PREJUDICE**;

3) Plaintiffs' claim for damages in excess of the LMMA's damages caps on their EMTALA claims against NLMC are **DISMISSED WITH PREJUDICE**;

4) Plaintiffs' state law claims under LADS and for negligence and malfeasance are **DISMISSED WITHOUT PREJUDICE** as premature;

5) Plaintiffs' EMTALA claims against NLMC are hereby **STAYED** pending a decision by the medical review panel in Plaintiffs' related state medical malpractice action in the interest of judicial economy.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 14th day of March, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE