UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| GREGORY SCOTT AND MICHELLE SCOTT, INDIVIDUALLY AND ON BEHALF OF THE MINOR J.S. AS THE PARENTS AND TUTORS OF J.S. | CIVIL ACTION NO. 16-0376 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RUSTON LOUISIANA HOSPITAL COMPANY, LLC | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is Plaintiffs Gregory Scott and Michelle Scott's (collectively "Plaintiffs") Motion for Interlocutory Appeal under 28 U.S.C. § 1292(b). See Record Document 61. Defendant Ruston Louisiana Hospital Company, LLC d/b/a Northern Louisiana Medical Center ("NLMC") does not oppose the Motion. See id. For the reasons contained in the instant Memorandum Ruling, Plaintiffs' Motion is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

NLMC is a healthcare services company that owns and operates a hospital with an emergency department in Ruston, Louisiana. See Record Document 1 at 1-2. Brady DuBois ("DuBois") was the CEO of NLMC at the time of the events relevant to the instant action. See id. at 5. Plaintiffs are residents of Lincoln Parish, Louisiana, and parents of the minor J.S. See id. at 1.

In the early hours of August 19, 2014, J.S. presented to NLMC's emergency room with neurological deficiencies in both her upper and lower extremities. See id. at 2. By 9:07 AM, the attending emergency room physician, Dr. James Taylor ("Dr. Taylor"), wanted to order an MRI to evaluate J.S.'s condition. See id. However, no MRI was performed upon J.S. until after 3:00 PM. See id. Plaintiffs allege, based upon deposition

testimony by Dr. Taylor, that the delay was the result of a policy at NLMC "that requires that emergency room requests for MRIs be summarily denied and delayed until reimbursement from the insurance company has been certified." Id. Plaintiffs allege that if the MRI had been performed at the time Dr. Taylor originally sought to perform it, the hematoma on J.S.'s spinal cord would have been identified and treated in enough time to prevent the permanent paralysis she later developed or that the severity of her symptoms would have been reduced. See id. at 2-3.

Plaintiffs first filed a state malpractice claim with the Louisiana Patient Compensation Fund, seeking review of the claim by a medical review panel as required by the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1, *et seq*. See Record Document 15 at 1. Plaintiffs took Dr. Taylor's deposition in that case, and discovered that they might have a claim under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et seq*. See id. Plaintiffs subsequently filed the instant action in federal court on March 21, 2016, with the following causes of action: (1) EMTALA violations for inadequate medical screening, disparate screening, delay of appropriate medical screening, and delay of further medical examination and treatment; (2) violation of the Louisiana Anti-Dumping Statute ("LADS"), La. R.S. § 40:2113.4-6; (3) negligent administration under state tort law; (4) malfeasance under state tort law; and (5) "intentional action" by "sanitizing" medical records. Id. at 8-13. Plaintiffs also affirmatively alleged that any damages awarded for their EMTALA claims are not subject to the LMMA's damages caps. See id. at 9.

On May 6, 2016, Defendants filed a Rule 12(b)(6) Motion to Dismiss seeking (1) complete dismissal of all of Plaintiffs' claims, with prejudice, or (2) alternatively, a stay of

all of Plaintiffs' claims pending a decision by the medical review panel in the separate state medical malpractice case in its Motion to Dismiss. See Record Document 10 at 1. Defendants also argued that "the plaintiffs' claims sounding in medical negligence, which defendants submit encompasses all complaints made herein, are premature." Record Document 10-2 at 3. After extensive briefing on the Motion, Magistrate Judge Hayes issued a Report and Recommendation recommending that the Motion be granted in part with the following disposition:

1) Dismissal of Plaintiffs' intentional tort claims with prejudice;
2) Dismissal of Plaintiffs' EMTALA claims against DuBois with prejudice;
3) Dismissal of Plaintiffs' claim that their EMTALA claims are not subject to the LMMA's damages caps with prejudice;
4) Dismissal of Plaintiffs' claims under LADS and for negligence and malfeasance without prejudice as premature because they fall under the LMMA's definition of medical malpractice and therefore must first be presented to a medical review panel.

See Record Document 27 at 26-27; see Scott v. N. La. Med. Ctr., 2016 U.S. Dist. LEXIS 185056 (W.D. La. 2016). It also recommended staying the instant action pending the outcome of the related medical review panel in the state malpractice case. See id. at *29-30. Finally, it recommended that the Motion be denied with respect to Plaintiffs' EMTALA claim against NLMC, leaving the EMTALA claim against NLMC as the only remaining claim in the instant action.[1] See id. at *9-13, 31.

---

[1] The parties' Joint Statement of the Case, which they provided to this Court after the previous District Judge assigned to this case recused himself, erroneously states that the state law negligent administration and malfeasance claims against NLMC and DuBois will remain if the Report and Recommendation is accepted. See Record Document 49 at 4. However, the Report and Recommendation clearly recommends that all of these claims against both NLMC and DuBois be dismissed without prejudice. See Record Document 27 at 26-27; see Scott v. N. La. Med. Ctr., 2016 U.S. Dist. LEXIS 185056 at *31 (W.D. La. 2016).

After the Magistrate Judge issued her Report and Recommendation, the parties went through several rounds of briefing regarding the Report and Recommendation. See Record Documents 28, 30, 35, 38, 44, 45, and 48. On March 14, 2017, this Court adopted the Report and Recommendation. See Record Document 58; see Scott v. Ruston La. Hosp. Co., LLC, 2017 U.S. Dist. LEXIS 36539 (W.D. La. 2017). Plaintiffs filed the instant Motion for Interlocutory Appeal on April 3, 2017. See Record Document 61.

**LAW AND ANALYSIS**

    **I.    Legal Standards**

    **A.  Interlocutory Appeals Under 28 U.S.C. § 1292(b)**

"Interlocutory appeals are disfavored, and statutes permitting them must be strictly construed." Allen v. Okam Holdings, 116 F.3d 153, 154 (5th Cir. 1997) (per curiam). One provision permitting interlocutory appeals is 28 U.S.C. § 1292(b). This provision sets forth the following procedure for permitting an interlocutory appeal:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). Thus, this statute allows a district court to permit an interlocutory appeal when the judge finds that (1) the order in question involved a controlling question of law as to which there is substantial ground for difference of opinion and (2) an immediate appeal from the order may materially advance the termination of the litigation.

See id. Even if a district court allows an interlocutory appeal, however, the Court of Appeals retains discretion to permit or deny such an appeal. See id.

## II. Analysis

Plaintiffs argue that an interlocutory appeal of the Court's Memorandum Ruling and Order adopting the Magistrate Judge's Report and Recommendation is appropriate under the standards for granting such an appeal in 28 U.S.C. § 1292(b). See Record Document 61. They argue that the Court's decision that the LMMA's damages caps apply to their EMTALA claim is a controlling question of law upon which there is a substantial ground for difference of opinion because at least one district court in the Fifth Circuit has reached the opposite conclusion. See id. They also argue that obtaining a decision on this issue while the case is stayed will materially advance the termination of the litigation. See id.

### A. Summary of the Court's Opinion Adopting the Recommendations of the Magistrate Judge

This Court, agreeing with the Magistrate Judge, held that the proper method of determining whether damages in an EMTALA claim are subject to the LMMA's damages caps required determining, on a case-by-case basis, whether the plaintiff's allegations fit within the LMMA's definition of "medical malpractice." Scott, 2017 U.S. Dist. LEXIS 36539 at *8-20. This conclusion was based upon Congress' intent, as stated in the plain language of 42 U.S.C. § 1395dd(d)(2)(A), that successful plaintiffs in EMTALA actions may recover "those damages available for personal injury under the law of the State in which the hospital is located." See id. at *9-10. The Court further explained that (1) there is no direct conflict between EMTALA and the LMMA that would trigger EMTALA's express preemption provision in 42 U.S.C. § 1395dd(f); and (2) that most federal courts "have held that EMTALA's incorporation of state law extends to caps on damages for

medical malpractice claims so long as the challenged conduct falls within the particular state's definition of malpractice." Id. at *11-12, citing Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 862-64 (4th Cir. 1994).

Next, the Court agreed with the Magistrate Judge's analysis of whether Plaintiffs' allegations fall under the definition of "medical malpractice" in the LMMA, a determination that involves an analysis of both the statutory definition of the term in La. R.S. § 40:1231.1(A)(13) and the factors set forth by the Louisiana Supreme Court in Coleman v. Deno, 813 So. 2d 303, 315 (La. 01/25/2002). See id. at *11-15 and 15 n.4. In agreeing with the Magistrate Judge's determination that the claims in the instant action fall under the LMMA, the Court also rejected Plaintiffs' criticism of this analysis as a misapplication of the Federal Rule of Civil Procedure 12(b)(6) standard. See id. at *11-15.

Finally, the Court took note of the fact that Plaintiffs had submitted new authority and new evidence that, according to Plaintiffs, constituted grounds for disagreeing with the Magistrate Judge's decision. See id. at *16-22. The Court found that Billeaudeau v. Opelousas Gen. Hosp., 2016 La. LEXIS 2082 (La. 10/19/16), though it may contain some language helpful to Plaintiffs in the analysis of a few of the Coleman factors, addressed only whether a claim for negligent credentialing falls under the LMMA, not whether the broader category of all negligent administration claims fall under the LMMA. See id. at *15-20. Thus, the Court held that this new authority did not alter the Court's conclusion that the Magistrate Judge's Report and Recommendation was correct. See id. As to Plaintiffs' proposed new evidence, the Court held that the evidence could not be considered in deciding a Rule 12(b)(6) motion, and that even if it were considered it would not alter the Court's conclusion that the Magistrate Judge's Report and Recommendation

<em>Page **6** of **13**</em>

was correct. See id. at *20-21. The Court then stayed the case pending the release of the state medical review panel's decision in the related state medical malpractice action, agreeing with the Magistrate Judge that staying the instant action pending the outcome of the state medical review panel's decision is in the interest of judicial economy due to the relatedness of the issues in the two actions. See id. at *22-23.

**B. The Court Agrees With Plaintiffs That an Interlocutory Appeal Is Appropriate Under These Circumstances.**

The first element a district court must find to permit an interlocutory appeal is that the order in question involved "a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). The Court finds that whether the LMMA's damages caps apply to the EMTALA claim in the instant action is a controlling question of law. It is true that if the damages caps apply, they are not fatal to Plaintiffs' claim, as they would merely limit any potential recovery rather than preclude recovery altogether. However, Plaintiffs allege that because of NLMC's actions (at least in part), J.S. is now permanently paralyzed. See Record Document 1 at 7. Presumably, the damages sought for such serious injuries will be extremely high, and they will certainly exceed the LMMA's caps because Plaintiffs seek a decision that they do not apply. See La. R.S. § 40:1231.2(B)(1) (limiting recovery in all malpractice claims to a maximum of $500,000, exclusive of future medical care costs, interests, and court costs) and (B)(2) (limiting recovery to $100,000 in a malpractice claim against a qualified health care provider as defined in the LMMA).

Even in EMTALA cases in which the injuries suffered are not so serious, whether to impose a damages cap of as low as $100,000 is a major legal question that has a profound effect upon the resolution of such cases and the decision of potential plaintiffs

to file such suits at all. Additionally, the Court notes that the Fifth Circuit has recently granted leave to file an interlocutory appeal under somewhat analogous circumstances, when the question at issue was whether certain categories of damages were available in a claim under the Age Discrimination in Employment Act ("ADEA"). See Vaughan v. Anderson Reg'l Med. Ctr., 2017 U.S. App. LEXIS 2699 (5th Cir. 2017) (affirming the district court's decision that Fifth Circuit precedent interpreting the ADEA precludes the recovery of pain and suffering and punitive damages in an ADEA claim). Thus, the Court finds that whether the LMMA's damages caps apply both to EMTALA claims generally and to the claim in the instant action is sufficiently significant to constitute a "controlling question of law" within the meaning of 28 U.S.C. § 1292(b).

The Court also finds that there is a substantial ground for difference of opinion on this question. Plaintiff correctly argues that Jeff v. Universal Health Servs., 2005 U.S. Dist. LEXIS 17819 (E.D. La. 2005) supports their position that their EMTALA claim is not subject to the LMMA's damages caps. See Record Document 61-2. Jeff involved a claim by a decedent's surviving wife and children against a hospital that had allegedly refused to permit the decedent to see a doctor when he presented to the emergency room. See Jeff, 2005 U.S. Dist. LEXIS 17819 at *1-2. Allegedly, Jeff did not even see a triage nurse, but rather simply filled a prescription he had obtained earlier and went home. See id. He went back to the emergency room the next day and was hospitalized, but he died two days later. See id.

After the plaintiffs filed suit under EMTALA, the hospital moved for partial summary judgment, seeking a decision that the plaintiffs' EMTALA claims are subject to the LMMA's damages caps. See id. at *4-7. The Court denied the Motion. See id. It reasoned

that EMTALA creates a distinct federal cause of action based on a strict liability standard rather than a negligence standard. See id. at 7. It also found that an EMTALA claim is not analogous to a medical malpractice claim. See id. Finally, the court found the fact that EMTALA does not incorporate a state's procedural limitations for malpractice actions supports the conclusion that EMTALA also does not incorporate a state's medical malpractice damages caps. See id.

As briefly set forth in Section II, A, *supra*, and in more detail in this Court's opinion, this Court respectfully disagrees with the analysis in Jeff and agrees with that of the Magistrate Judge in her Report and Recommendation in the instant action. See Scott v. N. La. Med. Ctr., 2016 U.S. Dist. LEXIS 185056 (W.D. La. 2016); see Scott v. Ruston La. Hosp. Co., LLC, 2017 U.S. Dist. LEXIS 36539 (W.D. La. 2017). This Court finds the Jeff court's comparison between EMTALA's relationship to procedural requirements of state medical malpractice statutes and its relationship to damages caps in such statutes particularly unpersuasive. While EMTALA expressly preempts state law to the extent state law "directly conflicts" with EMTALA and many courts have determined that procedural requirements in state medical malpractice statutes do so, EMTALA expressly incorporates state law for the determination of the damages available in EMTALA claims. 42 U.S.C. § 1395dd(f); see 42 U.S.C. § 1395dd(d)(2)(A). Thus, in this Court's opinion, the case-by-case determination of whether an EMTALA claim is subject to the LMMA's damages caps is consistent with the plain language of both EMTALA and the LMMA, while the Jeff court's decision that EMTALA claims are never subject to the damages caps is inconsistent with the plain language of both statutes. See Power, 42 F.3d at 860-64 ("courts must look at the underlying conduct challenged in the EMTALA claim and the

legal basis for the challenge to determine whether such a claim, if brought under state law, would be encompassed within the state's personal injury damage limitation, the medical malpractice damages cap, both, or neither").

Nonetheless, the Court recognizes that the fact that another district court within the Fifth Circuit has decided the same question differently means that there is at least some disagreement on this legal question. The Court notes that the Fifth Circuit has recently granted leave to file an interlocutory appeal when district courts within the Fifth Circuit have disagreed on a particular legal question. See United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co., 843 F.3d 1033, 1035 (5th Cir. 2016) (noting that the district judge permitted an interlocutory appeal after a different district court disagreed with that court's decision, and that the Fifth Circuit also permitted the appeal). Thus, the Court finds that there is "substantial ground for difference of opinion" on whether the LMMA's damages caps apply to EMTALA claims. 28 U.S.C. § 1292(b).

The second element a district court must find to grant leave to file an interlocutory appeal is that "an immediate appeal from the order may materially advance the termination of the litigation." Id. This element turns upon "pragmatic considerations." SCM Corp. v. Xerox Corp., 474 F. Supp. 589, 594 (D. Conn. 1979). For example, if a case is nearly ready for trial, an interlocutory appeal is generally not proper, as delaying such a case would actually hamper its progress towards termination. See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 611 F. Supp. 281, 284-85 (S.D.N.Y. 1985); Edwards v. National Audubon Soc., 411 F. Supp. 744, 747 (S.D.N.Y. 1976). There is no requirement that permitting an interlocutory appeal be certain to materially advance the termination of the litigation; rather, 28 U.S.C. § 1292(b) only

requires that permitting such an appeal "*may* materially advance the ultimate termination of the litigation." Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original).

The instant action is at an early stage. Only a portion of the discovery that is likely to occur in the case has taken place, and the case is certainly not ready for trial. Plaintiffs also correctly point out that the instant action is currently stayed pending the outcome of the state medical review panel's decision in the related state medical malpractice case. See Record Document 61 at 4. Thus, no activity is occurring in the instant action at this time, making it an optimal time for obtaining a definitive decision on the important question of the applicability of the LMMA's damages caps.

The Court also finds that a decision on this issue may help to advance settlement, a factor that courts have found significant in permitting interlocutory appeals to proceed. See Sterk, 672 F.3d at 536 ("uncertainty about [the issue in the interlocutory appeal] may delay settlement . . . and by doing so further protract the litigation. That is enough to satisfy the "may materially advance" clause of section 1292(b)"). This is particularly true if this Court's decision is affirmed, as it will set a ceiling for the amount of damages that Plaintiffs may recover at all and limit settlement discussions to the range of damages available under the LMMA's damages caps. Finally, the Court notes that the Fifth Circuit recently permitted an interlocutory appeal when it found that permitting an interlocutory appeal would help prevent post-trial appeals on the same topic. See Cazorla v. Koch Foods of Miss., L.L.C., 838 F.3d 540, 548 (5th Cir. 2016) (permitting an interlocutory appeal on a discovery matter, even though such matters "normally do not merit interlocutory review"). Thus, the Court finds that an interlocutory appeal on the issue of

the applicability of the LMMA's damages caps to the EMTALA claim in the instant action "may materially advance the termination of" the instant action. 28 U.S.C. § 1292(b).

## CONCLUSION

The Court finds that its decision that the LMMA's damages caps apply to Plaintiffs' EMTALA claim in the instant action (1) involves a controlling question of law as to which there is substantial ground for difference of opinion; and (2) that an immediate appeal from this decision may materially advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(b). Thus, Plaintiffs' Motion for Interlocutory Appeal (Record Document 61) is **GRANTED**.

This Court recognizes that its formulation of the questions presented in an interlocutory appeal are not binding upon an appellate court reviewing its orders. See Cazorla, 838 F.3d at 548 n.16 ("an appellate court may address any issue fairly included within a certified order because it is the order that is appealable, and not the controlling question identified by the district court") (internal citations omitted). Thus, the Fifth Circuit may address other questions in addition to the matter discussed in the instant Memorandum Ruling in an interlocutory appeal. However, as this Court views the issues, the questions before the Fifth Circuit on appeal are as follows:

1. Are claims under EMTALA (1) not subject to the LMMA's damages caps at all, as the court in Jeff v. Universal Health Servs., 2005 U.S. Dist. LEXIS 17819 (E.D. La. 2005) held; or (2) subject to the case-by case analysis outlined in Scott v. N. La. Med. Ctr., 2016 U.S. Dist. LEXIS 185056 (W.D. La. 2016) and Scott v. Ruston La. Hosp. Co., LLC, 2017 U.S. Dist. LEXIS 36539 (W.D. La. 2017) to determine whether the claims fit under the LMMA's definition of "medical malpractice"?

2. If the latter analysis is correct, are Plaintiffs' EMTALA claims in the instant action subject to the LMMA's damages caps? In other words, did the Magistrate Judge and this Court correctly apply the case-by-case analysis in the instant action?

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 12th day of April, 2017.

                                                         S. MAURICE HICKS, JR.
                                           UNITED STATES DISTRICT JUDGE